IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

GARY J. JOHNSON,                                    CV. 09-6097-MA

            Plaintiff,                        OPINION AND ORDER

    v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

            Defendant.

D. JAMES TREE
Tree Law Offices
3711 Englewood Avenue
Yakima, WA 98902

    Attorney for Plaintiff

DWIGHT C. HOLTON
United States Attorney
District of Oregon
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

TERRYE E. SHEA
Special Assistant United States Attorney
Assistant Regional Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075

    Attorneys for Defendant

MARSH, Judge

Plaintiff Gary J. Johnson seeks judicial review of the final decision of the Commissioner of Social Security denying his application for supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C §§ 1381-83f.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  For the reasons that follow, I REMAND the final decision of the Commissioner for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was 37 years old at the time of the hearing, and has completed a general education diploma.  Plaintiff received some janitorial building maintenance education in 1997, and has previously worked as a farm laborer, dishwasher, pizza delivery driver, fast food counter worker, and as a sander in a lumber mill. Plaintiff has a history of poly-substance abuse and was incarcerated from approximately 1989 to 1998.

Plaintiff filed his current application on January 6, 2005, alleging disability beginning on June 21, 2004, due to an affective mood disorder and an anxiety disorder.[1]  His claim was denied

---

[1]Plaintiff filed an application for SSI benefits on January 31, 2001, alleging that he had been disabled since July 18, 2000, due to post traumatic stress disorder (PTSD) and an affective or mood disorder.  The 2001 claim was denied initially, and plaintiff did not appeal.  Plaintiff protectively filed for SSI benefits again on June 22, 2004, alleging disability beginning March 1, 2004, due to testicular cancer and nephrolithiasis (kidney stones).  This claim also was denied

initially, and on reconsideration.  Plaintiff requested a hearing before an administrative law judge (ALJ), which was held on May 15, 2008.  Plaintiff, who was represented by an attorney, testified at the hearing.  A vocational expert (VE) also testified.  At the hearing, plaintiff requested that his 2004 claim be reopened, which the ALJ denied based on the unfavorable decision.

The ALJ issued an adverse ruling on May 29, 2008.  Plaintiff filed a request for review, and submitted additional evidence from William Wright, a vocational expert.  The Appeals Council considered the additional information, and concluded that it did not provide a basis for changing the ALJ's decision.  Therefore, the Appeals Council denied the request for review, and the ALJ's decision became the final decision of the Commissioner.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled.  Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920.  Each step is potentially dispositive.  The claimant bears the burden of proof at steps one through four.  See Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  At step five, the burden shifts to the Commissioner to show that the claimant can do other work

---

initially and plaintiff did not seek an appeal.

which exists in the national economy. <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1043 (9th Cir. 1995).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since his alleged onset of disability. <u>See</u> 20 C.F.R. §§ 416.920(b), 416.971 *et seq.*

At step two, the ALJ found that plaintiff had the following severe combination of impairments: poly-substance abuse, depressive disorder, PTSD, history of testicular cancer, back pain, and irritable bowel syndrome. <u>See</u> 20 C.F.R. § 416.920(c).

At step three, the ALJ found that plaintiff's impairments, or combination of impairments did not meet or medically equal a listed impairment. <u>See</u> 20 C.F.R. §§ 416.920(d), 416.925, 416.926.

The ALJ assessed plaintiff with a residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 416.967(b), and further limited to unskilled work with little public contact, brief social interactions with co-workers and supervisors are acceptable, but that plaintiff would work best alone. <u>See</u> 20 C.F.R. §§ 416.927, 416.929.

At step four, the ALJ found plaintiff unable to perform any past relevant work. <u>See</u> 20 C.F.R. § 416.965.

At step five, the ALJ concluded that considering plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that the claimant can perform. See 20 C.F.R. §§ 416.960(c), 416.966.

## ISSUES ON REVIEW

On appeal to this court, plaintiff contends the ALJ committed several errors: (1) improperly assessed plaintiff's credibility; (2) improperly assessed the physician's opinions; (3) failed to assess the lay witness testimony; and (4) posed an inadequate hypothetical to the vocational expert.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); Andrews, 53 F.3d at 1039.  It is a highly deferential standard of review.  Valentine, 574 F.3d at 689.  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039; Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).  The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, if supported by inferences reasonably drawn from the record, and even if the evidence is susceptible to more than one rational interpretation.  Tommasetti, 533 F.3d at 1038; Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). The court will not reverse an ALJ's decision for harmless error

where it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination. Tommasetti, 533 F.3d at 1038; Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1055-56 (9th Cir. 2006).

**DISCUSSION**

**I.  Plaintiff's Credibility.**

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis.  20 C.F.R. §§ 404.1529.  The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged.  Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991); Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).  At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms.  Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1166 (9th Cir. 2008); Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).  The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony.  Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002); Tommasetti, 533 F.3d at 1039; Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995).  Factors the ALJ may

consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. Tommasetti, 533 F.3d at 1039; Bunnell, 947 F.2d at 345-46.

At the hearing, plaintiff testified that his testicular cancer diagnosis in 2004 was a turning point in his health. Plaintiff stated that he was informed that his cancer may have spread to other organs, and that in December 2007 he learned that he had cancer in his remaining testicle. Plaintiff testified that following his cancer surgery, he developed irritable bowel syndrome and lactose intolerance. Plaintiff also testified that a disc problem in his back causes pain, but that his lack of health insurance prevents him from proceeding with surgery or physical therapy.

At the hearing, plaintiff also described feelings of guilt, anxiety and depression, resulting in conflicts and anger toward others. Plaintiff testified that he has not consumed alcohol or drugs since 1999. Plaintiff described his physical restrictions as limited to sitting for 15 to 30 minutes and standing for 30 minutes, that he is unable to walk on a decline, suffers chronic fatigue requiring him to lie down once per day, and increasing pain in his low back as the day continues. (Tr. 20.)

The ALJ concluded that plaintiff has medically determinable impairments that could reasonably be expected to produce some symptoms, but that plaintiff's statements concerning the intensity, persistence, and limiting effects were not entirely credible.

Contrary to plaintiff's assertion, the ALJ pointed to specific record evidence undermining his subjective complaints.  The ALJ rejected plaintiff's allegation that his testicular cancer surgery forms the basis of his alleged health problems.  For example, the ALJ detailed evidence from Eugene Fuchs, M.D., plaintiff's treating physician for his testicular cancer, who opined on February 8, 2005, that plaintiff should have "no physical disability from the relatively minor surgical procedure" performed to remove the tumor on his right testicle in June 2004. (Tr. 277.)  The ALJ discussed that fortunately, plaintiff did not require chemotherapy following the procedure, and that all of plaintiff's laboratory work indicates that he remains cancer free. (Tr. 269-73, 424-36.) As the ALJ noted, plaintiff's physicians informed plaintiff that his risk of recurrence was low. (Tr. 248.)  When the claimant's own medical record undercuts his assertions, the ALJ may rely on that contradiction to discredit the claimant.  Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999); Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007), cert. denied, 522 U.S. 1141 (2008).

Furthermore, despite plaintiff's positive prognosis, plaintiff sent a letter to the social security hearings office, dated

December 5, 2007, claiming that a tumor had been discovered in his remaining testicle the previous day, and that he was homeless and without money.  (Tr. 215.)  When the ALJ inquired about the letter at the hearing, plaintiff claimed to be confused about what his doctors had informed him, yet admitted that the letter he sent was not true.  (Tr. 539.)  "Where, as here, the ALJ has made specific findings justifying a decision to disbelieve an allegation . . . and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision."  Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).  Accordingly, the ALJ could properly discredit plaintiff's testimony concerning his alleged fear of returning testicular cancer.

The ALJ also concluded that plaintiff's minimization about his drug and alcohol abuse relapses undermined his credibility.  At the hearing, plaintiff contended that he had not used methamphetamine or alcohol for eight years.  However, the ALJ detailed an emergency room report on October 6, 2007, in which plaintiff sought care for "methamphetmine abuse."  The ALJ discussed that a urinalysis performed confirmed the presence of amphetamines and marijuana metabolites (THC).  When asked about the 2007 emergency room visit, plaintiff explained that he permits drug users stay at his home, and that one individual had left behind a soda pop containing methamphetamine which plaintiff unwittingly consumed.  (Tr. 553.)  The ALJ found plaintiff's explanation to be

less than forthcoming, noting that plaintiff had not offered that explanation to the emergency room physicians at the time, and therefore discredited plaintiff on that basis.

The ALJ also found plaintiff's use of medical marijuana also undermined his credibility.  At the hearing, plaintiff testified that he uses medical marijuana about once a week to stimulate his appetite and relieve nausea.  However, as the ALJ discussed in his decision, neither of plaintiff's treating physicians have *recommended* medical marijuana.  Indeed, the ALJ noted that Samuel G. Taylor, M.D., plaintiff's oncologist, stated that plaintiff "continues to take medical marijuana for reasons which are not quite clear to me." (Tr. 21, 416.)  While plaintiff asserts that the ALJ should not discredit plaintiff for admitting to medical marijuana use, I conclude that discrediting plaintiff for using medical marijuana where it has not prescribed by a health care provider is not erroneous.  See Morgan, 169 F.3d at 600 (questions of credibility are solely functions of the Commissioner).

Likewise, the ALJ also discredited plaintiff for his inconsistent explanations of his alcohol use.  At the hearing, plaintiff asserted that he had not consumed alcohol since 1999.  However, as the ALJ noted, plaintiff informed his treating physician Dr. Taylor on August 22, 2006, that he drinks two beers every night to stimulate urination. (Tr. 21, 418.)  When asked about his report to Dr. Taylor at the hearing, plaintiff informed

the ALJ that he cannot afford alcohol, and that he only consumed "near beers." (Tr. 549.) The ALJ found plaintiff's statement inconsistent because he had not offered that clarification to Dr. Talyor at the time. I agree with the ALJ that plaintiff's various statements are not entirely consistent and that the ALJ could discredit plaintiff on that point. See Verduzzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999)(inconsistent statements about alcohol use may be used to discredit testimony).

Plaintiff argues that even if his testimony concerning his alcohol consumption is inconsistent, the ALJ should not use that information to discredit him because "there is no indication that [plaintiff's] impairments are caused or exacerbated by alcohol abuse." (Plaintiff's Memorandum of Support (#16), p. 17.) Plaintiff's argument misses the mark. The inconsistencies between plaintiff's hearing testimony and reports to his physicians pertain to plaintiff's veracity, not his functional capacities. It is well established that an ALJ may rely on ordinary techniques of credibility evaluation, including the testimony of a claimant that appears less than candid. Smolen, 80 F.3d at 1281-82.

The ALJ also discussed that plaintiff's complaints of disabling back pain were not supported by the medical evidence, noting that plaintiff's medical treatment has not focused on his alleged back pain, and that he has primarily followed conservative treatment through the use of muscle relaxers. (Tr. 21.) The ALJ's

assessment of plaintiff's back pain is supported by substantial evidence in the record.  See Parra, 481 F.3d at 751 (evidence of conservative treatment may be used to discount a claimant's testimony).

I conclude that the untruthful letter in light of plaintiff's contrary medical record, multiple inconsistent statements about his drug and alcohol relapses, questionable medical marijuana use, and complaints of disabling back pain despite conservative treatment, when taken together, provide clear and convincing support, backed by substantial evidence, for the ALJ's adverse credibility finding. Tomasetti, 533 F.3d at 1039; Orteza, 50 F.3d at 750.

## II.  Medical Evidence.

To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons for doing so.  Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005); Rodriquez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989).  If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons.  Bayliss, 427 F.3d at 1216.  An ALJ can meet this burden by providing a detailed summary of the facts and conflicting medical evidence, stating his own interpretation of that evidence, and making findings.  Tommasetti, 533 F.3d at 1041; Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989).  When evaluating conflicting opinions, an ALJ is not required to accept

12 - OPINION AND ORDER

an opinion that is not supported by clinical findings, or is brief
or conclusory.  Id.  An ALJ also may discount a physician's opinion
that is based on a claimant's discredited subjective complaints.
Tommasetti, 533 F.3d at 1040.

    **A.  Dr. Alaimo.**

    Plaintiff alleges that the ALJ did not properly evaluate the
opinion of Robert J. Alaimo, D.O., his treating physician since
2006.  In a two-page report dated May 9, 2008, Dr. Alaimo stated
that he believed plaintiff would miss four days or more of work
because of chronic pain, and noted that plaintiff had been
prescribed Flexeril, a muscle relaxer.  Although a treating
physician's opinion is generally afforded the greatest weight, it
is not binding on the ALJ.  Morgan, 169 F.3d at 600.

    In the decision, the ALJ rejected the opinion of Dr. Alaimo
because Dr. Alaimo had based his diagnosis of "lumbrosacral strain"
on a positive straight leg test.  The ALJ noted that a strain
typically resolves within months, and would not be a basis for
disability, yet Dr. Alaimo asserted that plaintiff's condition has
worsened since December 2006.

    A thorough review of the record reveals that the information
provided by Dr. Alaimo is lacking.  Although plaintiff asserts that
he was seen by Dr. Alaimo seven times from December 2006 through
April 2008, records from Dr. Alaimo consist solely of a two-page,
fill-in-the-blank, check-the-box, report presented at the hearing.

(Tr. 526-27, 535.)  There are no underlying treatment records from
Dr. Alaimo contained in the record.  Indeed, an ALJ may discredit
a treating physician's opinion that is brief, conclusory,
unsupported by medical findings, or unsupported by the record as a
whole.  Batson, 359 F.3d at 1195; Thomas, 278 F.3d at 957;
Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  Given
the brevity of the report and the lack of supporting evidence
provided by plaintiff, I find that the ALJ has articulated specific
and legitimate reasons for rejecting Dr. Alaimo's opinion.

       With respect to plaintiff's alleged back pain, plaintiff notes
that Dr. Alaimo also offered a diagnosis of a herniated nucleus
pulposus, which plaintiff asserts may take surgery to resolve.
And, plaintiff complains that the ALJ rejected a notation from
Jennifer Pflug, M.D., one of plaintiff's treating physicians, that
plaintiff "may want to be seen by neurosurgery" because of a disc
herniation based on a 2005 MRI.  (Tr. 412.)

       The ALJ dismissed Dr. Pflug's request for a consult because
the ALJ did not see the 2005 MRI in the record.  Nevertheless, the
ALJ assumed the veracity of the MRI and noted that plaintiff has
not sought treatment for his alleged back impairment, maintaining
a conservative course of treatment. (Tr. 21, 392.)

       Although the ALJ erroneously attributed Dr. Pflug's notation
to Dr. Taylor, the results of the 2005 MRI do not lend any credence
to Dr. Alaimo's opinion and clearly do not establish disability.

14 - OPINION AND ORDER

To be sure, the 2005 MRI results show a moderate disc protrusion at T9-10, in plaintiff's *thoracic* spine, and provides that "[i]t is difficult to determine whether there is cord compression present." (Tr. 392.)  Plaintiff's current complaint, and that contained in Dr. Alaimo's report, is that plaintiff suffers from chronic *low* back pain, normally referring to the lumbar region.

Furthermore, as the ALJ correctly noted, there is no indication that plaintiff obtained a neurosurgical consult.  And, aside from Dr. Alaimo's two-page report and Dr. Pflug's comment about the MRI, plaintiff cites no other record evidence concerning plaintiff's alleged chronic low back pain.  As the ALJ correctly found, the medical record demonstrates that plaintiff's treatment since 2005 has focused on his cancer monitoring and his gastrointestinal difficulties.  Accordingly, I find no error in the ALJ's assessment of Dr. Alaimo's opinion.  Tommasetti, 533 F.3d at 1041; Thomas, 278 F.3d at 957.

**B.    Dr. Lyon.**

Plaintiff also complains that the ALJ errroneously rejected the opinion of Lawrence J. Lyon, Ph.D., an examining psychologist. Dr. Lyon performed psychological evaluations in 2001 and 2005.  In May 2001, Dr. Lyon diagnosed PTSD, Major Depressive Disorder, Amphetamine Dependence in Sustained Full Remission, and Nicotine Dependence, and assigned a Gobal Assessment of Functioning (GAF) score of 40.  (Tr. 228.)  In a March 2005, Dr. Lyon again diagnosed

PTSD, Major Depressive Disorder, Amphetamine Dependence in sustained full remission, Nicotine dependence, and a history of poly-substance abuse. Dr. Lyon again assigned a GAF of 40. Plaintiff apparently relies upon the low GAF score as an indication of disability. Plaintiff claims that the ALJ's proffered reasons for rejecting Dr. Lyon's opinion are insufficient. I agree.

In the instant proceeding, the ALJ noted that plaintiff was evaluated by Dr. Lyon shortly after his cancer treatment in 2004. While plaintiff's recent history of testicular cancer could account for a lower GAF score, this reason alone cannot suffice to discount Dr. Lyon's evaluation.

The ALJ also rejected Dr. Lyon's opinion because it was based upon the mistaken belief that plaintiff's poly-substance abuse was in sustained full remission. However, as plaintiff correctly highlights, the record supports plaintiff's assertion that he was in sustained full remission at the time of Dr. Lyon's March 2005 evaluation. As detailed above, the evidence concerning plaintiff's drug and alcohol use indicates relapses occurring in December and August 2006, and again in October 2007. Therefore, the ALJ should not have discounted Dr. Lyon's opinion on this basis.

The ALJ also rejected Dr. Lyon's opinion because he arrived at a GAF of 40, which may indicate a severe impairment, without

performing objective tests.[2]   Indeed, an ALJ need not accept an examining physician's opinion if it is not supported by clinical findings.  Thomas, 278 F.3d at 957.  While the ALJ could discount Dr. Lyon's evaluation for its lack of objective support, I conclude that the ALJ has failed to provide specific and legitimate reasons for rejecting it.

Moreover, the ALJ has failed to provide an analysis of the conflicting evidence concerning plaintiff's alleged mental impairments, and failed to make adequate findings.  Magallanes, 881 F.2d at 751.  The ALJ failed to discuss a separate evaluation conducted by Jim Greenough, Ph.D., an examining psychologist, who conducted an evaluation in February 18, 2000.  Dr. Greenough performed numerous objective tests and diagnosed plaintiff with alcohol dependence in remission 47 days, and polysubstance abuse in remission for 47 days, and assigned a GAF score of 50.

Additionally, the ALJ failed to discuss conflicting information contained in a Psychiatric Review Technique Form conducted by non-examining psychologist Frank Lahman, Ph.D., on June 20, 2001.  Dr. Lahman diagnosed Major Depressive Disorder, PTSD, and Amphetamine Dependence in sustained full remission.  Dr.

---

[2]Although an ALJ may reject an examining physician's opinion if it is based on a claimant's self-reports that have been properly discounted, here, the ALJ did not articulate that as a basis for rejecting Dr. Lyon's report.  Indeed, a reviewing court may not rely upon reasoning the ALJ did not assert.  See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).

Lahman concluded that plaintiff suffered mild restrictions of daily living, and moderate difficulties in maintaining social functioning and maintaining concentration, persistence and pace, and experienced no episodes of decompensation. (Tr. 240.)

Despite this somewhat conflicting information from Dr. Greenough and Dr. Lahman, the ALJ failed to offer an interpretation of that evidence. Therefore, the ALJ's rejection of Dr. Lyon's opinion, and the ALJ's conclusion that plaintiff's alleged mental impairments are not disabling, are not supported by substantial evidence. Tommasetti, 533 F.3d at 1041; Magallanes, 881 F.2d at 751.

Nevertheless, even if Dr. Lyon's opinion is credited as true, the record is at best unclear as to whether plaintiff is disabled. Dr. Lyon's GAF score of 40 is only an estimate of plaintiff's overall level of functioning at that time. See American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed. 1994, Text Revision 2000)(DSM IV-TR). It cannot serve as a substitute for the required objective medical evidence and work-related functional assessments needed to establish disability under the Social Security Act. On the record before me, there is no specific opinion from a treating or examining physician as to any functional limitations resulting from plaintiff's alleged mental impairments which would preclude him from some form of substantial gainful activity. Yet, a GAF score

18 - OPINION AND ORDER

of 40 is indicative of some impairment in reality testing or communication, or a major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood.  DSM IV-TR at 34; Bayliss, 427 F.3d at 1217.  Thus, the record is unclear as to whether plaintiff is disabled.

**III. Lay Witness Testimony.**

Plaintiff contends that the ALJ erred in failing to account for the lay witness testimony from his wife, Angela Johnson.  Lay witness testimony as to a claimant's symptoms or how an impairment affects his ability to work is competent evidence, which the ALJ must take into account.  See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).  The ALJ is required to account for competent lay witness testimony, and if he rejects it, to provide germane reasons for doing so.  Stout, 454 F.3d at 1055; Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

In this case, Mrs. Johnson submitted two third-party reports.  The first report, dated March 7, 2001, was submitted in connection with an earlier filed SSI application, which was denied.  In the March 2001 report, Mrs. Johnson describes plaintiff as very sensitive, responding poorly to criticism, and easily losing his temper.  (Tr. 92-103.)  Mrs. Johnson also stated that plaintiff takes no medication, needs no assistance with laundry, grooming, or

cooking, is involved with Narcotics Anonymous, and at that time, had been clean and sober for 14 months. (Tr. 111-12.)

Mrs. Johnson submitted a second report dated February 2005. In the 2005 report, Mrs. Johnson describes plaintiff as needing reminders to shave, eat, brush his teeth and take his medication. (Tr. 157.) Mrs. Johnson states that plaintiff cooks for himself, assists with dishes, takes care of his pets, does laundry and yard work, but needs to rest after two hours of yard work. Mrs. Johnson describes plaintiff as being unable lift more than 15 pounds, has difficulty kneeling, bending and squatting, and tires after walking two blocks. Similar to her 2001 report, Mrs. Johnson states that plaintiff is difficult to be around, responds poorly to criticism, has difficulty working with the public and co-workers, and is unable to handle stress. Mrs. Johnson also reports that plaintiff suffers each morning from vomiting or diarrhea caused by a bacterial ulcer. (Tr. 156-64.)

The ALJ wholly failed to discuss the either the March 2001 or February 2005 report from Mrs. Johnson. Therefore, the ALJ erred. Stout, 454 F.3d at 1055; Nguyen, 100 F.3d at 1467.

Acknowledging this error, the Commissioner contends that any mistake in failing to address Mrs. Johnson's lay testimony amounted to harmless error, citing Stout, 454 F.3d at 1055. In Stout, the Ninth Circuit concluded that an ALJ's failure to discuss competent lay testimony favorable to the claimant may constitute harmless

error if "it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Id. at 1056.

On the record before me, I cannot conclude that the failure to consider Mrs. Johnson's testimony was harmless. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006). In light of the ALJ's incomplete discussion of plaintiff's alleged mental impairments, it is unclear whether Mrs. Johnson's description of plaintiff's difficulties working with co-workers, handling stress and working under supervision would have resulted in the same RFC or disability determination. Furthermore, it is unclear whether Mrs. Johnson's testimony about plaintiff's vomiting and diarrhea would have supported any additional functional limitations.

**V.  Vocational Expert Hypothetical.**

Plaintiff also challenges the ALJ's step five determination, alleging that the hypothetical posed to the vocational expert was inadequate.  This argument is based upon the errors discussed above.  I conclude that because the ALJ erred in assessing the medical evidence and the lay testimony, the hypothetical posed to the ALJ was legally inadequate. Robbins, 466 F.3d at 886; Osenbrook v. Apfel, 240 F.3d 1157, 1163-65 (9th Cir. 2001). Accordingly, the ALJ's step five determination is not supported by substantial evidence. Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 531 U.S. 1038 (2000).

Having concluded that the Commissioner's decision should be reversed, the next issue is whether to remand for an immediate award of benefits or for further proceedings.  This decision is within the court's discretion.  Id.

Whether the action should be remanded for an award of benefits or for further proceedings depends upon the utility of additional proceedings.  Id. at 1179.  A reviewing court should credit the evidence and remand for a finding of disability and an award of benefits if: 1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; 2) there are no outstanding issues to be resolved before a determination of disability can be made; and 3) it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence in question were credited.  Id. at 1178; Smolen, 80 F.3d at 1292.  If it is not clear that the ALJ would be required to award benefits were the improperly rejected evidence credited, then the court has discretion whether to credit the evidence.  Connett, 340 F.3d at 876.

Here, although the ALJ failed to provide legally adequate reasons for rejecting the opinion of Dr. Lyon concerning plaintiff's alleged mental impairments, there is insufficient evidence in the record establishing disability on that basis. Even if Dr. Lyon's opinion is fully credited, he did not opine that plaintiff's mental impairments prohibit substantial gainful

activity.  Dr. Lyon assigned a GAF score indicating significant mental problems, however, that evidence conflicts with other evidence in the record.  Therefore, this is an outstanding issue to be resolved on remand.  See Bunnell v.Barnhart, 336 F.3d 1112, 1116 (9th Cir. 2003)(remanding case for further proceedings for resolution of outstanding issues).

Moreover, plaintiff complains that the RFC fails to account for his irritable bowel syndrome, but there is scant evidence of functional limitations arising from this condition.  And, as discussed above, it is not clear that the ALJ would be required to find plaintiff disabled if the testimony of Mrs. Johnson were credited.  Id.

Accordingly, a remand for further proceedings is appropriate in this instance.  Specifically, the Commissioner is instructed to evaluate plaintiff's alleged mental impairments and assess whether plaintiff's irritable bowel syndrome or other digestive issues create any functional limitations.  The Commissioner shall obtain independent medical and psychological evaluations, or a functional capacity assessment, if necessary.  The Commissioner shall consider lay testimony and reassess plaintiff's RFC in light of all the evidence.  The Commissioner may take into account any other appropriate factors that are already matters of record in making the disability determination.

////

23 - OPINION AND ORDER

## CONCLUSION

For the reasons stated above, the Commissioner's final decision denying benefits to plaintiff is REVERSED and REMANDED for further proceedings.

Section 406(b) of the Social Security Act "controls fees for representation [of Social Security Claimants] in court." <u>Gisbrecht v. Barnhart</u>, 535 U.S. 789, 794 (2002)(citing 20 C.F.R. § 404.1728(a)). Under 42 U.S.C. § 406(b), "a court may allow 'a reasonable [attorneys'] fee . . . not in excess of 25 percent of the . . . past-due benefits awarded to the claimant." <u>Id.</u> at 795 (quoting 42 U.S.C. § 406(b)(1)(A)). Because § 406(b) does not provide a time limit for filing applications for attorneys' fees and Federal Rule 54(d)(2)(B) is not practical in the context of Social Security sentence-four remands, Federal Rule of Civil Procedure 60(b)(6) governs. <u>Massett v. Astrue</u>, 04-CV-1006 (Brown, J.)(issued June 30, 2008). <u>See also McGraw v. Barnhart</u>, 450 F.3d 493, 505 (10th Cir. 2006).

////

////

////

////

////

////

To ensure that any future application for attorneys' fees under § 406(b) is filed "within a reasonable time" as required under Rule 60(b)(6), the Court orders as follows:  If the Commissioner finds plaintiff is disabled on remand and awards plaintiff past-due benefits and if, as a result, plaintiff intends to submit such application for attorneys' fees under § 406(b), plaintiff shall submit any such application within 60 days from the issuance of the Notice of Award by the Commissioner.

IT IS SO ORDERED.

DATED this _28_ day of JULY, 2010.

_/s/  Malcolm F. Marsh_____
Malcolm F. Marsh
United States District Judge